*989 OPINION OF THE COURT
Sabrina B. Kraus, J.
Background
This summary holdover proceeding was commenced by Georgetown Leasing L.L.C., and seeks to recover possession of apartment 6K at 170 East 4th Street, Brooklyn, New York 11218 based on allegations that the rent-stabilized tenant of record Hugh Oakley has illegally sublet the subject premises to Andrea Reid (undertenant).
Procedural History
On the initial return date of January 22, 2008, the proceeding was adjourned to February 13, 2008 for petitioner to move for discovery. On February 13, 2008, the respondent and undertenant were present, and the parties stipulated to the facts in fhis case, and agreed to submit the matter for a determination on the papers and pleadings in accordance with CPLR 409.
Stipulated Facts
The parties stipulated to the following facts:
(1) Respondent submitted a written application for the subject premises on or about November 12, 2003. The application indicated that respondent would be residing in the subject premises, and listed respondent’s previous address as 10 Stratford Road, apartment 2J, Brooklyn, New York 11218. The application also listed the undertenant as respondent’s emergency contact with the same Stratford Road address, but a different phone number. A copy of the application was submitted and marked as exhibit 1.
The application had a space for information from a coapplicant, but said portions of the application were left blank. The application indicated respondent was the only household member who would be living in the subject premises.
(2) Respondent executed an original lease for the subject premises on or about November 20, 2003 for a two-year term. Attached to said lease is a window guard rider indicating that no children under the age of 10 live in the subject premises. A copy of the lease and rider were submitted and marked as exhibit 2. Respondent acknowledged signing the lease and rider, but states he did not check the part of the rider indicating that no children under the age of 10 years live in the subject premises.
*990 Part of exhibit 2 is a “Limited Occupancy Rider” wherein respondent represented that he would be the sole occupant of the subject premises.
(3) On or about September 14, 2005, respondent renewed the lease for a one-year term. A copy of the renewal was submitted and marked as exhibit 3.
(4) On or about September 16, 2006, respondent renewed the lease again for a two-year period. Attached to said renewal were various documents (collectively the 2006 renewal package), including an information sheet, which listed the undertenant as an occupant, with a rider indicating no other occupants, and no children under 10 in the apartment.
Respondent makes the same allegation regarding the execution of this window guard rider as for the rider attached to the 2003 lease. Petitioner’s copy of the 2006 renewal package was submitted and marked exhibit 4, and respondent’s copy of the 2006 renewal package was submitted and marked as exhibit 4a. The two exhibits differ slightly and do not contain identical documents.
Additionally, the lease renewal from exhibit 4a indicates that the renewal had been signed by another person, as tenant, in addition to respondent. However said signature was crossed out, deleted with white out, and over it is written “unauthorized signature deleted 11/21/06.”
Exhibit 4 also indicates that undertenant is respondent’s fiancée and provides the petitioner with her Social Security number, and clearly indicates that the subject premises is her address.
(5) Respondent acknowledges that he never lived in the subject premises, and that he has at all times continued to reside at 10 Stratford Road. Respondent rented the subject premises solely for the purpose of providing a home for the undertenant and their minor daughter because the undertenant was “unable to be approved for the apartment on her own.”
(6) Respondent is legally married (not to the undertenant) and alleges that he cannot legally reside in the subject premises with the undertenant, as respondent pays child support to the undertenant. A letter from the Office of Child Support Enforcement to respondent dated December 24, 2007 was submitted and marked as exhibit 5.
(7) Respondent and undertenant also submitted their daughter’s passport and school records for the 2006-2007 school year *991 indicating she attended William McKinley Junior High School in District 20, marked as exhibits 6 and 7, respectively.
(8) Respondent’s daughter is currently 12 years old. Respondent and undertenant submitted a copy of the birth certificate for their daughter, hereinafter exhibit 8. (The birth certificate lists respondent and undertenant as the parents of the child.)
Additionally, it is undisputed that the undertenant has legal custody of respondent’s daughter, and that the undertenant and respondent’s daughter have lived in the subject premises from December 1, 2003 to date. Respondent further acknowledges that he has no intention to commence living in the subject premises in the future.
Based on the foregoing stipulation of facts and submission of documents the court is asked to render a decision on petitioner’s holdover proceeding.
Do the Facts Constitute an Illegal Subletting by Respondent, and, if so, What if Any Rights Do the Undertenant and Respondent’s Daughter Have to Continued Occupancy of the Subject Premises?
A sublease is a transfer by a tenant of an interest in the demised premises with a reservation of a reversionary interest in the lease. (1 Rasch, New York Landlord & Tenant — Summary Proceedings § 177, at 245 [2d ed].) Under the Rent Stabilization Code, if a tenant sublets an apartment without permission, the landlord may commence a proceeding prior to the expiration of the lease based on illegal subletting. (9 NYCRR 2525.6 [f|; 2524.3 [h].)
The Rent Stabilization Code defines a subtenant as a “person lawfully occupying the housing accommodation pursuant to an agreement with the tenant by authority of the lease or by virtue of rights afforded pursuant to section 226-b of the Real Property Law.” (9 NYCRR 2520.6 [k].) Section 226-b prohibits a tenant from subletting or assigning his rights without written consent from the landlord unless the lease gives the tenant greater rights than the Rent Stabilization Code.
Paragraph 2 of respondent’s lease provides that “The Apartment may be occupied by the immediate family of the tenant or tenants and by occupants as defined in and only in accordance with Real Property Law § 235-f.”
Similarly, Real Property Law § 235-f (3) provides that:
“Any lease or rental agreement for residential *992 premises entered into by one tenant shall be construed to permit occupancy by the tenant, immediate family of the tenant, one additional occupant, and dependent children of the occupant provided that the tenant or the tenant’s spouse occupies the premises as his primary residence.”
The statute does not define the term immediate family. The term immediate family has been defined by the Rent Stabilization Code to include a husband, wife, son, daughter, stepson, stepdaughter, father, mother, stepfather, stepmother, brother, sister, grandfather, grandmother, grandson, granddaughter, father-in-law, mother-in-law, son-in-law or daughter-in-law. (See e.g. 9 NYCRR 2104.5 [a].)
Even assuming, arguendo, the term immediate family did not include the undertenant, as the mother of respondent’s daughter, certainly respondent’s minor child would be considered to be his immediate family. Undertenant is the legal guardian of respondent’s daughter, and thus could derive rights to occupancy in her capacity as guardian.
Generally, courts have held that where the allegation of subletting is predicated upon a transfer of interest to an immediate family member, a cause of action for subletting does not lie, and the landlord must bring a nonprimary residence proceeding to obtain possession, if the essential allegation is based on the fact that the tenant of record does not maintain his primary residence at the subject premises. This body of case law is primarily from the First Department. (See e.g. MF Holding, LLC v Apostolopoulos, 2002 NY Slip Op 50168[U] [App Term, 1st Dept 2002] [dismissal of subletting proceeding was warranted where alleged subtenants were the tenant’s own children]; Santorini Equities, Inc. v Picarra, 2003 NY Slip Op 50645[U] [App Term, 1st Dept 2003] [presence of tenant’s daughter in premises did not rise to the level of prohibited sublet, but was permissible occupancy by immediate family member]; 235 W. 71 St. LLC v Chechak, 4 Misc 3d 114 [App Term, 1st Dept 2004] [appropriate remedy was a nonprimary residence proceeding as opposed to summary termination based on purported assignment or sublet between parent and child]; PLWJ Realty v Gonzalez, 285 AD2d 370 [1st Dept 2001] [where alleged subtenant was son of the tenant, and evidence primarily concerned nonprimary residence of tenant proceeding should have been dismissed]; Hudson St. Equities Group, Inc. v Escoffier, 2003 NY Slip Op 51213[U] [App Term, 1st Dept 2003] *993 [where alleged subtenant was foster brother of tenant of record arrangement was more of a licensee than a prohibited sublet].)[1]
The principal that courts will not find a substantial lease violation in a case alleging illegal subletting, where the alleged subtenant is an immediate family member, appears to hold true even in cases where there was no concurrent occupancy by the tenant and the family member. For example, in PLWJ Realty v Gonzalez (supra), the Appellate Term had found that the record established that the tenant’s adult son and family moved into the subject premises after the tenant had stopped residing there.[2] In Presbyterian Hosp of City of N.Y. v Melendez (2001 NY Slip Op 40512[U] [App Term, 1st Dept 2001]), the trial court determined that the tenant’s daughter had moved in after the tenant had vacated and there was no concurrent occupancy. While the only issue that went up on appeal was whether the tenant could cure, the concurring opinion of Justice GangelJacob noted that had the entire matter been subject to appeal the court would have found based on PLWJ Realty (supra) that the tenant’s daughter was an immediate family member entitled to occupy, and that landlord should have commenced a nonprimary residence case to regain possession of the premises.
Such decisions have led one court to conclude after a thorough analysis of recent case law on the issue that “[concurrent occupancy prior to vacatur of the tenant of record does not appear to be a factor in determining the existence of a sublet for the courts” (2500 Broadway, LLC v Ward, NYLJ, Mar. 3, 2004, at 19, cols 1, 4 [Civ Ct, NY County 2005, Lai, J.]).
However, in most of the cases discussed above, where courts held that the occupancy of a family member did not rise to the level of a substantial breach of lease, at some point during the course of the tenancy there was concurrent occupancy by the tenant and the family member, even if that concurrent occupancy was no longer in existence at the time the proceeding *994 was commenced. (Hudson St. Equities Group, Inc. v Escoffier [foster brothers were roommates in subject premises intermittently]; 235 W. 71 St. LLC v Chechak, 4 Misc 3d at 115 [tenant of record commenced occupancy with her then minor son]; MF Holding, LLC v Apostolopoulos, supra [subtenants were tenants own children who moved into the subject premises with their father at inception of the lease].)
Additionally, these decisions hold that a pertinent factor where the alleged sublet is to an immediate family member is whether the family member has “historical contacts” with the apartment. If the record establishes such contacts, case law provides that “the appropriate remedy is a nonprimary residence proceeding commenced upon the requisite statutory notice, as opposed to a summary termination of tenancy based on a purported assignment or sublet between parent and child.” (235 W. 71 St. LLC v Chechak, 4 Misc 3d at 115 [citations omitted].)
There seems to be no black letter definition of what is required to establish “historical ties” to an apartment. Moreover, absent this element the courts have held that a cause of action for subletting between a parent and a child will lie, and that the lack of contemporaneous occupancy takes on significance.
For example, in Alta Apts., LLC v Weisbond (10 Misc 3d 40 [App Term, 1st Dept 2005]) the Appellate Term reversed the trial court’s dismissal of a proceeding where the landlord alleged the tenant had sublet to his son. The court held that “[w]e note that the record is devoid of any evidence tending to show that [the son] had extensive occupancy ties to the subject apartment, and, indeed, that [the son’s] own affidavit appears to acknowledge that he never contemporaneously resided in the subject apartment with his father.” (Id. at 41 [citations omitted].) However, as in previous decisions, Justice Gangel-Jacob issued a dissenting opinion stating that “[i]n the absence of any showing whatsoever that a leasehold relationship existed between the father and son, the illegal sublet petition was properly dismissed. Landlord’s allegations may be pursued in the context of a nonprimary residence holdover proceeding.” (Id. at 42 [citations omitted].)
In this case, respondent’s daughter’s ties to the subject premises are stronger than respondent’s as she has resided there, as her only residence, with her mother since the inception of the tenancy. Thus, the court finds that her ties to the *995 apartment are sufficient to come under the purview of the holdings discussed above.
However, in the case at bar there is an unusual circumstance not present in any of the cases discussed above. Notably, the tenant of record has stipulated that he never resided in the subject premises, and that he has no intention to commence living there at any point in the future. He rented the premises solely to provide a home for the undertenant and their daughter. In fact, respondent alleges that he could not legally reside there as he is paying court-ordered child support to the undertenant, and he is legally married to someone else. Does the admission of nonprimary residence, coupled with an acknowledged intention never to use the premises as a residence for himself at all, warrant a different outcome in the case at bar?
In 1984, the Court of Appeals issued a decision in Tagert v 211 E. 70th St. Co. (63 NY2d 818 [1984]). In that case, the tenant of record sought written permission from the landlord to either sublet the subject apartment to his son and his son’s family for a period of time that he expected to be absent, or to allow them to occupy as immediate family members. The trial court held that the tenant’s son was entitled to occupy as both a subtenant and an immediate family member and the Appellate Division affirmed.
The Court of Appeals modified noting that, prior to the Appellate Division’s decision, the legislature modified section 226-b of the Real Property Law and the Administrative Code of the City of New York to require that a tenant seeking to sublet his apartment “establish that at all times he has maintained the unit as his primary residence and intends to occupy it as such at the expiration of the sublease.” (Tagert at 820.) The Court of Appeals further noted that the tenant’s application was not entitled to any greater rights under Administrative Code § YY51-6.0 (c) (4), which provided that the immediate family members of a tenant may occupy the apartment, as such provision required concurrent occupancy by the tenant and the. immediate family members. This requirement and the identical language relied upon the Court of Appeals in Tagert is contained in Rent Stabilization Code § 2525.6 (a).
The Court held
“[t]hus, while the lease provision may permit a tenant’s family to occupy an apartment with him, and allow those family members who actually live *996 with him to continue in residence for the remainder of the lease term in his absence, the lease provision does not permit family members to succeed to possession by moving into an apartment upon the tenant’s departure . . . (Id. at 821 [citation omitted].)
Tagert must stand for the proposition that the primary residence of a tenant is a relevant issue in determining whether occupancy by immediate family members constitutes subletting or not.
The holding that primary residence of a tenant, as well as an intent to return at the conclusion of the sublease, is relevant in a subletting proceeding was adopted by the Appellate Division, Second Department, in Cutler v North Shore Towers Assoc. (125 AD2d 532 [1986]). In Cutler the tenant had requested permission to sublease and landlord had denied the request. The tenant commenced a declaratory judgment action that the refusal was unreasonable. The trial court ruled against the tenant, and the Appellate Division confirmed the trial court’s finding that the denial was reasonable, and that landlord was entitled to a judgment of possession. While there is no indication that the sublease was between immediate family members, the decision emphasized that the issue of the tenant’s primary residence, as well as an intention on the part of the tenant to return at the conclusion of the sublease, were relevant and determining factors. Citing Tagert, the Appellate Division, Second Department, held in pertinent part: “We find no error in the trial court’s determination that the plaintiff failed to ‘establish that at all times he has maintained the unit as his primary residence and intends to occupy it as such at the expiration of the sublease.’ ” (125 AD2d at 532.)
Since the plaintiff had sublet the apartment without the consent of the defendant, and the defendant’s withholding consent, based on a determination that the plaintiff was not occupying the apartment as his primary residence, was reasonable, the trial court correctly concluded that plaintiff committed a substantial breach of lease entitling defendant to possession of the premises. (Cutler at 532-533 [citations omitted].)
Given the foregoing and the stipulated facts: that respondent has never occupied the premises for living purposes and has no intention of doing so in the future, and that there was never any concurrent occupancy between respondent and the under-tenant and respondent’s daughter, the court finds that petitioner *997 is entitled to a judgment of possession as against respondent and the undertenant.
In so holding the court is not unmindful of the fact that respondent’s daughter, although a minor, could claim succession rights to the apartment (see e.g. Quiala v Laufer, 180 AD2d 31 [1st Dept 1992]; Matter of Swann v Finkel, 295 AD2d 116 [1st Dept 2002]; Doubledown Realty Corp. v Harris, 128 Misc 2d 403 [App Term, 1st Dept 1985]), but again the admitted lack of any concurrent occupancy would preclude such a succession claim.
As the proceeding is based on a breach of lease, the issuance of the warrant is stayed for 10 days, in accordance with RPAPL 753 (4), for respondent to correct the breach of lease.
In the event respondent does not cure, the warrant of eviction may issue after May 2, 2008, upon submission of an affidavit from petitioner that respondent has not cured. In such event, execution of the warrant shall be stayed through and including October 31, 2008, pursuant to RPAPL 753 (1), for respondent and undertenant to vacate the subject premises, provided that respondent or the undertenant pays $823.89 for use and occupancy for the period of the stay on or before the 10th of each month from May 2008 through October 2008.

. Indeed, petitioner’s own predicate notice seems to adopt this position to some extent by alleging in the notice to cure that respondent had sublet the premises “to be used by persons other than yourself and your immediate family.” Presumably the “and” incorporates the concurrent occupancy requirement.

. While the dissent of Justice Gangel-Jacob at the Appellate Term, which reasoning was adopted by the Appellate Division, questioned the trial court’s finding that there had never been concurrent occupancy, the basis of the reversal seems to have been that the evidence produced at trial was primarily on the issue of the tenant’s nonprimary residence, and that no proof of a subletting agreement had been offered.